The next case for argument this morning is 14-1045 N. Re. Kalkanoglu. Mr. McNulty, when we get you back up here, you can tell me how to pronounce the name of this case. I'm sorry? You can tell me how to pronounce the name of this case. Kalkanoglu. It's a Turkish origin. May it please the court. I'd like to focus this argument on what we submit are a couple matters of reversible error in law that should deal with the issues in this case. First, as to the section 112 issue, whether the inventors were in command of the invention. Maybe you can get a little closer to the mic. Sorry. Is this better? Okay. Whether they were in command of the invention, as respects the few words of the preamble, is an issue that doesn't have to be reached because the precedent of this court has been that if the entirety of the body of claims in issue recite a complete invention and the preamble simply addresses a statement of goal or purpose, the statement of goal or purpose is not a limitation of the claim. Doesn't the fact that you, as I understand it, maybe I'm wrong, that you inserted the disputed language in the preamble in response to an examiner's rejection give us some reason to believe that the language in the preamble is a limitation? No. It's just the second time around that language was put in there because it was – because that was what the – that was what was produced when the complete removal of the transition areas took place. And that's why it was put in there. Why don't you turn to the obviousness issue? Okay. And the board's conclusions with respect to obvious. Okay. The principal issue and the obviousness issue is the combination of the issue of the – what Kaczynski shows in the prior art relative to the focus of the invention, that is, the complete removal of the transition area. The principal reason for – that we urge for reversal, however, is the hindsight issue modifying Kaczynski based on the teaching of Kalkinoglou together with what we submit as the most egregious error, that is, in analyzing the commercial success issue, the examiner and then – well, the examiner's position was that the only thing that counted was a detailed analysis of the market share and true sales figures related thereto. And the board affirmed on that basis. And our position is that's wrong in the law. And because the secondary indicia issues have to be considered at the same time as the prior art is being considered relative to the crux of the invention in the face of the prior art, the limitation – But the question is whether you get anything out of these sales figures. I'm sorry? The question is whether you get anything out of these sales figures. The question is whether they show anything. There has to be a nexus to the feature of the claimed invention, which is the removal of the entire slot. Yes. There are other aspects of these tiles which supposedly made them attractive, which the – what is the Owens Corning guy says in his affidavit. He doesn't say that these things are successful because they've removed the entire overlap area. He says they're successful because they stole our invention. He identified the centennial as being the one that caused the loss of market share to OCF and the gain to certainty. That's the only evidence regarding market share in this case. Our position is that the law does not require necessarily producing evidence of market share gain because of the invention. Because there are lots of other ways you can have commercial success as the numbers and the sales that we've presented relative to certain genes prior. Well, what shows that there was commercial success because of removal of the entire slot? That's what I'm not seeing. I mean, you may have some evidence that this product was commercially successful, but the affidavit or declaration that you yourself submitted appears to attribute that success to other features. The declaration of the marketing person, Mr. Batt, is specific to – is because of the complete removal, and that's presented as expert testimony. That's reinforced by at least two, if not three, other declarations that we submitted tying the – what centennial means is complete removal. And it was because of the complete removal that it was successful. Where – show me where Owen's guy says that it's complete removal that – He does not use those words, complete removal. No, he does? He's – I was referring to the certainty employees declarations, not the – not Bert Elliott, the Owen's Corning person. The bottom line is that under Granby, Deere, and KSR, the court – the board should look to the words for any secondary considerations that would prove instructive. And for the examiner and the board below to have limited their look to only detailed analysis of market shares and sales figures is not – For example, the one cited by Judge Dyke, which is to be probative of the fact of commercial success, you have to establish a nexus between the inventive feature and the commercial success. So you may ultimately disagree with the outcome, but it seems to me they really did do the analysis that they were required to do. What they said was we didn't – they said as to commercial success, we failed to show detailed analysis of the market share, increase in market share, and the nexus thereto. We don't question that we did not – we were not able to show actual numbers on market share because that information isn't available. But as to commercial success itself and the nexus, that's present throughout the various declarations of – Well, there were some testimony by the employees, but that wasn't supported by corroborating evidence like surveys or affidavits from customers, which is – That is correct. So, I mean, nobody's denying you put forth some evidence. The board didn't find that that was sufficient to establish commercial success given the parameters that our law requires in terms of how probative the evidence has to be. So why is my take on that wrong? Couldn't the board just consider those – couldn't the board just consider those declarations to be self-serving and discount them accordingly? Well, just because they're employees of a company doesn't mean they're liars. No, no, no, no, no, no, no. I didn't say anything about being liars. I said self-serving, and couldn't they – when they're weighing the evidence, couldn't they take that into account? They could, but what they said was they rejected or they affirmed the examiner because we didn't have detailed market share evidence. And my point is the law does not – it's not so limited. You won't find anything in Granby Deer that says market share. The more recent KSR case, again, says it should look to any secondary considerations that would prove instructive. And my point is the board provided too narrow a test, and I submit contrary to the law on the subject. And since that was part of their analysis with the entire 103 question, it colors the entire analysis of the 103 question. And so I submit it's contrary to law that the position in the 103 should not stand because they limit it to a far too narrow analysis that is not supportable in law. Why don't you reserve your rebuttal time if that's okay, and we'll hear from the government. May it please the Court. The 103 rejection here does not suffer from a hindsight problem. Koshitsky teaches the desirability of imparting sharp demarcation to adjacent shingles when you put these manufactured shingles onto a roof. And what he says is standing in the way of that sharp demarcation is that intermediate area between adjacent shingles where the granules from one and another overlap. So you get that sort of hazy gray in between what is otherwise pretty definitive shingles. And what he says is the solution to achieving that sharp demarcation is cutting slots into the intermediate area to remove the overlap. Now what he says is I think you can get away because remember these are shingles on a roof. So it's not like you're up front like this and you can see the overlap that perhaps is left. At 100 feet away you can leave a little bit on the side and you're going to get that result of sharp demarcation because to the human eye it's not going to perceive that. And it's actually illustrated quite strongly in the reference when you take a look at the figures. This is on A520. Figure 6 which is also in our red brief shows sort of an up close view of what I would say is this preferred embodiment. This idea that I don't have to remove all of the intermediate area. You can leave some there but you've got that clear spacing between adjacent shingles. But then when you look at figure 11, figure 11 is the shingle mounted on the roof, what it appears like to the human eye. When you look at that slot 76, there's nothing there. It looks as if nothing has been left in the intermediate area. And that's what he's teaching. He's teaching that to the human eye you can get away with removing less. The disputed language teaching away. The board clearly recognized that what Kaczynski, this is column 7, A524, column 7, roughly line 15, this idea that even if the slot doesn't take up the entire width of the intermediate area, you're still going to form from a distance that sharp visual demarcation. That's what the invention here of claim 1 is all about. Kaczynski clearly renders, it clearly would have been within the skill of the ordinary artisan given the knowledge of Kaczynski to arrive at the invention of claim 1. So then we turn to the indicia of non-obviousness, particularly the commercial success evidence. And the board correctly found here that Kalkin Nugalu had not proven either prong. The first prong is to actually demonstrate that you have a commercially successful product. The evidence here is simply that we have two products offered by CertainTeed and what their dollar sales were for a particular year. We have no evidence of what the market is. We have no evidence where the shingles sit in that market. The evidence actually here suggests that I'm not even sure those two shingles are actually— They're at the top of the market. You know, it's interesting because— That was a joke. Oh, that's nice. I missed it. Thank you. Okay, I'll do better next time. You're supposed to laugh at judges, Jeff. I'll laugh now. At A201 to 205, there's actually a marketing brochure from something called Roofing Contractor which says these are high-end shingles. It's a comparison chart of high-end shingles. And while it includes at A202 the centennial slate, it doesn't actually include the other CertainTeed slate that was offered by the declarants for the comparative sales data. I'm not even sure we're talking about the right market. But to be sure, the market includes at least 15 other slates according to this piece of paper. Even accepting that he's proven some modicum of commercial sales, there's no nexus. There's clearly other factors at play as to why people are purchasing these slates. And the declarants of, for example, the bat declaration at A127 refers to the fact that people are purchasing these because they look like natural slate. That's not in Claim 1. Claim 1 says in the preamble, gives the appearance of individual slates or tiles. Those are wholly different things. And at A101, Jenkins, for example, does actually get closer to the claim language and he says people are buying these things because they look like individual slates or tiles. The problem is, I think as Chief Judge Post pointed out, there's nothing to substantiate that. That's just his unsubstantiated opinion as to why others are actually buying these things. So for all of these reasons, the obviousness conclusion here explained by the examiner and the board is correct and should be approved. So if this panel has no questions, I'll yield the remainder of my time and rest on my feet. Thank you. The language just quoted by Mr. McManus from the Kaczynski pattern as even if there is not complete removal, there still performs a demarcation and it shingles. That lends itself equally to teaching away as does the entirety of the rest of Kaczynski. Every figure, every other comment in there, the claims all teaching away now. How could you have teaching away if there's no suggestion that removing the entire overlap area would be undesirable? I didn't quite hear you. How could you have teaching away if there's no suggestion that the removal of the entire overlap area would be undesirable? Because the entirety of the rest of Kaczynski talks of always leaving some on each side of the slide. But it doesn't suggest there's any advantage to that, does it? Presumably that's the demarcation that Kaczynski was looking for. He was looking for a certain level of demarcation near the size of the slots in each tab of the shingle. And I come back to my point. Hindsight issue is not to be looked at all by itself. As the opinions of this court have said many times, you look at it all together. And the deficiencies of the opinion of the board to the effect that you look only at the market share evidence, that's not supportable in the law. And that, I submit, taints the entire Section 103 analysis of the board. And that's my position on that. Thank you. Thank you. Thank you both sides in the case you submitted. That concludes the proceedings for this morning. All right. The honorable court is adjourned from day today.